UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------x
Dawn F. Littlejohn,                        :
                                           : 13 CV 1116 (RWS) (JCF)
                        Plaintiff,         :
                                           :
        -against-                          : **AMENDED COMPLAINT**
                                           : **JURY TRIAL DEMANDED**
                                           :
City of New York, John B. Mattingly,       :
Former Commissioner, Amy Baker,            :
Brandon Stratford, et al,                  :
                                           :
                        Defendants.        :
-----------------------------------------x

RECEIVED SEP 23 2013 U.S. CASHIERS

### AMENDED COMPLAINT

Plaintiff, by her attorney, Gregory G. Smith, submits this amended complaint to further amplify and enlarge the allegations previously filed in the original complaint. This amended complaint does not include documents that were formerly annexed to the original complaint. Now therefore, Plaintiff complaining of Defendants alleges:

### THE NATURE OF THIS ACTION

1.    This action is brought to remedy discrimination, retaliation and harassment on the basis of race, color and sex in the terms, conditions and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e and 703 et seq., 42 U.S.C Sections 1983 and 1981 et seq.

### JURISDICTION

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343, 42 U.S.C. Section 1983 and 42 U.S. C. Section 1981. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified 42 U.S.C. Sections 2000e and 703 et seq. ("Title VII").

3. Venue in the Southern District of New York is proper under Section 1391 of Title 28 and each claim for relief stated herein arises within this District.

## PARTIES

4. Plaintiff DAWN F. LITTLEJOHN hereinafter "Plaintiff" is an African American female of Caribbean descent and citizen of the United States of America.

5. Plaintiff, DAWN F. LITTLEJOHN ("Plaintiff",) is a female black citizen of the United States and resident of New York County who holds a Masters Degree in Industrial/Organizational Psychology from Teacher's College, Columbia University obtained in 1991.

6. Defendant, CITY OF NEW YORK ("City")is a municipal corporation existing under and by virtue of the laws of the State of New York.

7. NEW YORK CITY ADMINISTRATION FOR CHILDREN'S SERVICES (hereinafter "ACS")is an agency or department of defendant City of New York, duly existing by reason of, and pursuant to,

-2-

the laws of the City and State of New York.

8.    NEW YORK CITY DEPARTMENT OF JUVENILE JUSTICE
(hereinafter "DJJ")is an agency or department of the
defendant, City of New York, duly existing by reason of, and
pursuant to the laws of the City and State of New York.

9.    At all relevant times, defendant, JOHN B. MATTINGLY
("Mattingly")was employed by the City of New York in various
positions including Commissioner of ACS.

10.   Defendant Mattingly, male white, is sued here both
in his personal and official capacities.

11. At all relevant times, defendant, Amy Baker
("Baker") was employed by the City in various positions
including Chief of Staff for Commissioner John Mattingly.

12.   Defendant Baker, female white, is sued here both in
her personal and official capacities.

13.   At all relevant times, defendant Brandon Stradford
("Stradford"), was employed by the City of New York as
Director of Employment Services for the Division of
Administration at ACS.

14.   Defendant Stradford male black, is sued here both
in his personal and official capacities.

15.   At all relevant times, defendants were acting
under color of the statutes, ordinances, regulations, customs
and usages of the United States, and the State of New York,

-3-

and under the authority of their respective positions or offices.

16. At all relevant times, the discriminatory conduct complained of herein was directed at numerous other employees of color, similarly situated with Plaintiff.

## **POLICY, CUSTOM, PATTERN, PRACTICE AND USAGE ALLEGATIONS**

17. At all relevant times hereinafter mentioned and between January 2009 through December 2012 the City had a pattern and practice, policy, usage and custom of minimizing the role, impact, power, influence, importance of the EEO office, not providing needed staff and resources for the job, and the people who were the EEO directors and officers of the forty (40) mayoral agencies in the City of New York by discriminating against black employees who were employed at City agencies in the capacity of EEO Director or equivalent by demoting, involuntarily transferring, cutting the pay, demoralizing, not promoting, and terminating these aforementioned City employees because of their race and color and replacing them in the main with less experienced white employees whom the City gave needed staff and resources to do the job properly.

18. As an example, but not the sole example of race discrimination against black EEO Officers employed at City agencies during the aforementioned time period was Special

-4-

Hagan, Esq. female black EEO Director for the Department of Information Technology and Telecommunications, ("DOITT") who was demoted and involuntarily transferred to the Department of Corrections ("DOC")in or about February 2011, not as EEO Director but, in a demoted position. Subsequently, in or about June 2011 she was terminated from employment at the DOC on the basis of her race and color.

19. Upon information and belief, Attorney Hagan was replaced by a less qualified Emily Johnson female white attorney (not barred)with little to no experience in the equal employment area, as EEO Director for DOITT at a higher salary than Ms. Hagan.

20. As an example, but not the sole example of race discrimination against black EEO Officers employed at City agencies during the aforementioned time period was Lyndell Phillips, Esq. female black Assistant Commissioner EEO for the New York City Fire Department ("FDNY"), who upon information and belief, was demoted and later terminated on April 6, 2012 after holding the position since on or about June 2006. Ms. Phillip's job was posted while she was still employed in the position. Ms. Phillips was ultimately replaced by a woman of color with no or less experience than Ms. Phillips. Moreover, she was the only black assistant commissioner who was terminated from the FDNY when

-5-

Commissioner Cassano was appointed. All the other white assistant commissioners stayed in place, or their titles were changed, or they were shifted to other positions with no demotions or loss of pay or seniority.

21. As an example, but not the sole example of race discrimination against black EEO Officers employed at City agencies during the aforementioned time period was Patrick Damas male black Deputy EEO Officer for the FDNY. Mr. Damas was constructively discharged in 2012 when the FDNY failed to support him in his office by not providing staff and resources to do the job properly. He was replaced by another black male who had no or less experience with EEO matters.

22. As an example, but not the sole example of race discrimination against black EEO Officers employed at City agencies during the aforementioned time period was Ricardo Granderson, Esq. male black EEO Director for the Department of Parks and Recreation. In or about 2011 he resigned from his employment after several occasions where he, as the EEO Director, was disrespected by outburst in training sessions, unwanted video taping, and a union training session where he was the target of disingenuous and disrespectful accusations and comments.

23. As an example, but not the sole example of race discrimination against black EEO Officers employed at City

-6-

agencies during the aforementioned time period was Mr. Kevin
Johnson male black Deputy Commissioner EEO for the Department
of Corrections. In December 2009 he resigned because he
received no support, no staff and no resources from the
agency to fulfill his job duties and responsibilities. His
predecessor Luis Burgos male Hispanic also resigned because
he had no support staff and resources to do the job properly.
Kevin Johnson's replacement was Patricia LeGoff, Esq. white
female with less experience and who was given professional
support staff and resources to do the job properly.

24.   As an example, but not the sole example of race
discrimination against black EEO Officers employed at City
agencies during the aforementioned time period was Tanya
Hayes female black EEO Director for the Department of
Juvenile Justice. Ms. Hayes was terminated in 2011 from ACS
by Belinda Conway female white, Executive Deputy Commissioner
at ACS after the merger between ACS and DJJ. Upon information
and belief, her position was filled by a white female.

25.   Upon information and belief, the source of which is
Ricardo Granderson, EEO officers at the various City agencies
have no place, no forum, no person to complain to when they
feel that they are the victims of discrimination. Plaintiff's
case and allegations herein are reflective of a broader, more

-7-

wide-spread policy and practice that the City had of terminating its black EEO Officers.

## STATEMENT OF THE CLAIM

26. More than 30 days prior to the institution of this lawsuit, a Charge of Discrimination was filed with the Equal Employment Opportunities Commission alleging violations of Title VII by defendants. The EEOC issued a "right to sue" letter to Plaintiff. All conditions precedent to the institution of this lawsuit have been fulfilled and this lawsuit has been filed within ninety (90) days of receiving such right to sue letter.

27. Plaintiff commenced her employment with ACS on April 27, 2009 as Director of the Equal Employment Opportunity Office hereinafter ("EEO"). Plaintiff's job duties and responsibilities, included, but were not limited to, conducting investigations, training staff, monitoring the agency's hiring process, counseling agency employees, organizing diversity activities, and advising staff on the City's EEO policy.

28. Plaintiff has always performed her job duties and responsibilities satisfactorily.

29. On or about October 2, 2006 Maryann Salley ("Salley") female black then, Director of Equal Employment

Opportunity substantiated a claim of employment
discrimination against defendant, Amy Baker.

30. Upon information and belief, the source of which
was Tom Trottier and Yvette Scott, in or about November 2008,
Salley female black had been involuntarily transferred from
her EEO post. Salley had no deputy EEO officer to help her
with the work load. Said EEO post remained vacant for about
one and one half years. Plaintiff eventually filled Salley's
position as Director of Equal Employment Opportunity ("EEO")
on or about April 27, 2009. When Plaintiff filled the post
she discovered a substantial backlog of EEO cases including,
but not limited to, an unresolved audit of the agencies EEO
practices initiated by the Equal Employment Practices
Commission ("EEPC") in 2005. Plaintiff also had no deputy EEO
officer to help her with the work load.

31. On or about Dec 20, 2009, Plaintiff's then assigned
supervisor, Anne Williams-Isom a female black Deputy
Commissioner over inter-governmental and community affairs
departments at ACS, including, but not limited to the Equal
Employment Opportunity office. Ms. Williams-Isom left ACS,
but before leaving she conducted performance appraisals on
all of her direct reports including Plaintiff. She gave
Plaintiff an above average review.

-9-

32.   On or about January 2010, defendant Baker notified Plaintiff via telephone call that she now has absorbed all of the duties and responsibilities that Williams-Isom had in her position as Deputy Commissioner including, but not limited to, the EEO office and that she (Baker) was now charged with responsibility to oversee all EEO matters.

33.   As a result of Amy Baker's take over of all of Williams-Isom duties and responsibilities from on or about the beginning of January 2010 to on or about April 30, 2011 many black and Latino men and women from clerical workers to managers who were previously managed by Williams-Isom were adversely affected in their employment, including, but not limited to, terminations, demotions, lay-offs, unfavorable reassignments, reprimands and loss of pay.

34.   On or about January 10, 2010, Baker white female increased Plaintiff's reporting schedule from an as- needed-basis under Williams-Isom to twice-weekly reporting under Baker.

35.   Within the month of January 2010 Baker took over responsibilities for the oversight of the EEO Office and the relationship between Baker and Plaintiff immediately began to diminish and strain.

36.   In January 2010 defendant Baker began to minimize Plaintiff's role and lessen her authority within the agency over EEO matters. As an example, but not the sole example of disparate and unequal treatment, Commissioner Mattingly thought that it was a [good idea] for Plaintiff to sit in on monthly management committee meetings. When Plaintiff brought the idea to her supervisor, defendant Baker, she said in sum and substance, no I don't think it is a good idea, [you don't understand the culture here, they are not ready for that] referring to Plaintiff. Accordingly, Plaintiff could not attend the monthly management committee meetings.

37.   On January 20, 2010, the City of New York through the Mayor's office announced a decision to implement a merger of The New York City Department of Juvenile Justice hereinafter ("DJJ") and ACS (the "Merger").

38.   Defendant Mattingly was appointed by the City to plan and implement the merger.

39.   The City's stated goal of the MERGER was to "further improve the results being achieved for New York City's delinquent youth by combining the resources" of DJJ and ACS.

40.   The City's plan for the implementation of the Merger between ACS and DJJ called for DJJ to be "absorbed" into ACS; in the merger numerous employees from DJJ would be

laid off, demoted, reassigned or terminated, while certain others were designated as "preferred" staff to be retained.

41.     At all times relevant to this amended complaint the lower level employees of ACS and DJJ were predominantly black or people of color. However, on the other hand, the executive staff was predominately white and female.

42.     Upon information and belief, at all relevant times, defendants, Mattingly male white and Baker female white harbored racial animus towards blacks and persons of color.

43.     In Plaintiff's capacity as EEO Director regarding the transition of the merger Plaintiff was encouraged and told by Commissioner Mattingly that she should be part of the panel of managers that implemented the intake of DJJ employees.

44.     On or about January 2010 to March 2010 Plaintiff repeatedly asked defendant Amy Baker and Belinda Conway female white, Executive Deputy Commissioner to participate in the decision making process and be permitted to discharge her responsibility to ensure that procedures were in accordance with established manual guidelines and policies with regard to DJJ employees who would be laid off, demoted, reassigned or terminated.

-12-

45. Despite Plaintiff's efforts and defendant Mattingly's encouragement, Plaintiff's race and color nevertheless negatively affected her ability to get onto the panel of managers because defendant Amy Baker female white and other white managers acting under her direction deliberately impeded, stymied, and suffocated Plaintiff's efforts to become a member of the panel of managers overseeing the merger.

46. Eventually, after many management meetings had already occurred and only after Diane Crothers female white Assistant Commissioner for Department of Citywide Administrative Services ("DCAS")demanded that Plaintiff be included in all management meetings pertaining to the merger, in or about April 2010 Plaintiff was finally permitted to attend the merger meetings as a member of the panel of managers however, defendant Baker instructed Plaintiff that she should [observe only and that Plaintiff's input was not needed].

47. Defendant Baker said the above statement despite the fact that Plaintiff had the responsibility to complete adverse impact analysis on those DJJ employees whose terms and conditions of employment could and would be altered.

48. During the period April 2010 through December 2010 Plaintiff repeatedly made requests for a greater role in

-13-

the decision making process, with respect to layoffs for ACS
and DJJ employees that appeared to have no adverse impact.
However, upon Plaintiff's closer inspection many of these
layoffs appeared to have discriminatory objectives and were
carried out without a fair, equitable or proper programmatic
and functional analysis.

49.    Defendant Amy Baker said on several occasions in
or about January 2010 until in or about March 2011, when
Plaintiff was involuntarily transferred to the Office of
Personnel Services within the Division of Administrative
Services, stripped of her managerial title and incurred a pay
cut to her base salary, would in a sarcastic and
condescending manner say to Plaintiff the words [you feel
like you are being left out].

50.    Plaintiff objected to Defendant Baker's tone and
choice of words, as well as, what Plaintiff perceived to be
discriminatory behavior towards her.

51.    As a result of Plaintiff objecting to defendant
Baker, defendant Baker became angry; she reported Plaintiff
to defendant Commissioner Mattingly on or about January 3,
2011 and subsequently, on or about January 5, 2011 defendant
Commissioner Mattingly summoned Plaintiff to his office and
told Plaintiff in sum and substance: that Amy was hurt, that
you hurt her feelings and with a grin on his face he said if

-14-

you don't know it by now Amy wields a lot of power around
here.

52. Defendants including Amy Baker retaliated against
Plaintiff for complaining about her lack of involvement from
an EEO perspective in the decision making process of DJJ and
ACS job actions regarding job eliminations, terminations,
demotions, pay cuts, and reassignments by demoting Plaintiff
on March 14, 2011 from EEO Director to Assistant to the
Director (not assistant director) of Employee Relations, and
by taking plaintiff's management title away, cutting
Plaintiff's pay and involuntarily transferring Plaintiff.

53. Shortly after Plaintiff's meeting with defendant
Mattingly on January 5, 2011 Plaintiff's staff began to make
comments to her such as you are going to be transferred out.
One employee, Inga Collazo white Hispanic female, Principle
Administrative Associate shared with Plaintiff that she had
three separate meetings with defendant Baker behind
Plaintiff's back where defendant Baker was asking for
negative information about Plaintiff. Ms. Collazo told
Plaintiff that she said nothing negative about her.

54. As another example, but not the sole example of
harassing conduct by defendant Baker, employee Yvette Scott
female black Clerical Associate II who at the time was a
Clerical Associate IV and who was taking college classes,

-15-

defendant Baker was upset at the fact that Plaintiff was attempting to move Ms. Scott from clerical work to more professional work in being an EEO Counselor and taking witness statements.

55. Accordingly, in or about October 2010 defendant Baker said to Plaintiff in sum and substance that Yvette didn't have that capacity and that she wasn't very smart. Plaintiff objected and again defendant Baker reported Plaintiff to Defendant Mattingly.

56. Defendant Mattingly said to Plaintiff that she was given clear instructions to not have Yvette involved in any professional type work that she was simply fit to answer the phones. Mattingly further stated in sum and substance to Plaintiff that, I hope we don't have to have this discussion again.

57. Plaintiff had to go back to Yvette to tell her that Plaintiff was directed to take the professional tasks from her and Plaintiff was told that she should just continue to answer the phones.

58. Yvette was visibly shaken and began to cry. Accordingly, Plaintiff had to take duties from Yvette and rescind everything that was said to her about giving her task that would help her become more of a professional.

-16-

59.    Furthermore, defendants demoted Yvette from
Clerical Associate IV to Clerical Associate II and cut her
pay approximately twenty thousand ($20,000.00) dollars where
Yvette originally made approximately over fifty thousand
($50,000.00) dollars.

60.    In or about February 2011 Inga Collazo was laid
off where similarly situated white employees received title
changes.

61.    Upon information and belief, the source of which
is the New York City Department of Citywide Administrative
Services Layoff manual hereinafter ("the lay off manual")
states in sum and substance, that an adverse impact review
and analysis is mandated under circumstances as stated above.

62.    In furtherance of their discriminatory objectives,
in or about January 2010 to December 2010 defendants
purposefully circumvented established guidelines, policies
and procedures as stated in the lay off manual for the
selection of employees who would be laid-off, demoted,
reassigned or terminated, including without limitation,
refusing to conduct the requisite candidate evaluations and
structured interview process.

63.    From on or about January 2010 through on or about
March 2011 defendants Baker and Mattingly showed preferential
treatment to white employees by hiring or retaining less

-17-

qualified white female and male employees while laying off, demoting, reassigning or terminating black employees who were in many cases over the age of 40, or people of color.

64.     During the above stated time period, Plaintiff in her capacity as Director of EEO repeatedly objected and complained to defendants Mattingly and Baker about defendants' selection process and failure to abide by proper anti-discrimination policies and procedures, to no avail.

65.     From on or about January 2010 to March 14, 2011 Plaintiff objected to defendants Mattingly and Bakers' discriminatory policies during scheduled meetings with them.

66.     On or about January 2010, Plaintiff reached out for help and complained to the then Assistant Commissioner, EEO at DCAS Diane Crothers female white regarding being barred from meetings critical to perform her job duties and responsibilities as EEO Director for ACS.

67.     This resulted in a meeting where Plaintiff, defendant Baker, ACS General Counsel and Assistant Commissioner Crothers visited ACS with other top level DCAS legal staff in an attempt to advise the ACS of good business practices and the need for EEO inclusion on personnel matters resulting from the merger and other downsizing efforts. Defendant Baker was visibly angered.

-18-

68.    In retaliation for Plaintiff's verbal complaints
of racial discrimination and violations of law by defendants,
Plaintiff was subjected to differential and less favorable
treatment in the terms, conditions and privileges of her
employment relationship with defendants eventually leading to
her demotion.

69.    As hereinafter specifically alleged, since
January 2010 to Plaintiff's constructive discharge on
September 24, 2012 defendants Mattingly, Baker and others
under their direction, including defendant Stradford have
created a hostile work environment for Plaintiff.

70.    Furthermore, since January 2010, defendants have
subjected Plaintiff to harassment that had the effect of
unreasonably interfering with plaintiff's work performance
and creating intimidating, hostile or offensive work
environment that seriously affected the physical and
psychological well being of Plaintiff.  Plaintiff was
subjected to acts of harassment and discrimination because of
her race, color and sex.

71.   From January 2010 to March 14, 2011 besides the
above referenced retaliatory and discriminatory acts of
defendants, defendant Baker contributed to creating and
maintaining a hostile work environment by physically
distancing herself from Plaintiff at meetings, when Baker was

-19-

noticeably impatient, shook her head, blew air out of her mouth when Plaintiff talked in the presence of other managers, held her head in disbelief, got red in the face, used harsh tones, removed Plaintiff's name from the regularly scheduled management meeting lists, refused to meet with Plaintiff face-to-face, diminished Plaintiff's duties and responsibilities as EEO Director, changed meetings that were supposed to be scheduled as in person bi-monthly meetings to twice a week over the phone discussions with Plaintiff, and replaced Plaintiff at management meetings with Plaintiff's white male subordinate, (Tom Trottier).

72. In addition, and since January 2010, defendants have subjected Plaintiff to differential and less favorable terms and conditions of employment because of race, color and sex. These differential terms and conditions of employment include, but are not limited to:

73. Failure to reassign Plaintiff to a managerial position on or about March 14, 2011 for which she was suitable and well qualified

74. Incessant harassment from January 2010 to March 14, 2011 including, but not limited to, derogatory speech as mentioned above from defendant Baker, heightened reporting and work requirements from defendant Baker, continuous

wrongful and unnecessary reprimands regarding Plaintiff's staff, not experienced by similarly situated white managers.

75. As an example but not the sole example of harassing conduct by defendant Baker from January 2010 to March 14, 2011 Plaintiff was required to report to defendant Baker more often than under her predecessor Ann Williams- Isom and defendant Baker increased Plaintiff's work load by requiring Plaintiff to re-create reasonable accommodation and EEO logs even though these logs were already in place. Defendant Baker required Plaintiff and her staff to revise these EEO logs numerous times unnecessarily.

76. Accordingly, during said time period from January 2010 to March 14, 2011 defendants retaliated against Plaintiff by creating a hostile work environment because Plaintiff raised issues regarding the under-representation of black women in top management jobs as well as complaining about the lower salaries of black males when compared to their white male counterparts. A hostile work environment was created for Plaintiff because she also complained about lower management ("M") Levels for blacks as opposed to the higher management levels for whites.

77. Plaintiff was therefore, perceived as a trouble maker throughout her time at ACS. Moreover, in January 2010

-21-

defendant Baker stated in sum and substance to plaintiff that you don't understand the culture here.

78.  As another example, but not the sole example of discriminatory, retaliatory and harassing treatment, on or about March 14, 2011, Plaintiff was demoted from her position as EEO Director and replaced by Fredda Monn white female with no prior EEO experience. Ms. Monn was previously the Director of the Accountability/Review Unit that had nothing to do with EEO matters but, Ms. Monn's previous position involved the comprehensive review of child welfare case practices. Ms. Monn was given more pay and she was given a deputy EEO officer to help her with the work load.

79.  As another example, but not the sole example of discriminatory, retaliatory and harassing conduct, on or about March 14, 2011, Plaintiff was demoted from a Managerial title to a civil service non-managerial title of Administrative Staff Analyst with a two thousand plus ($2000.00+) dollar pay cut.

80.  As another example, but not the sole example of discriminatory, retaliatory and harassing conduct Plaintiff was deliberately isolated, "frozen-out" and excluded from all deliberations, meetings, and responsibilities to which she would ordinarily have been a participant, and to which her white EEO counterparts in ACS were routinely invited.

81.   On or about October 14, 2011 Plaintiff filed a charge of discrimination with the EEOC.

82.   On December 12, 2011 Plaintiff participated in a charge of discrimination by testifying at a deposition for a co-worker who filed a race discrimination law-suit against the ACS.

83.   Defendants retaliated against Plaintiff when on March 14, 2011 Plaintiff was demoted and involuntarily transferred to the Office of Personnel Services as an Assistant to the Director of Employee Relations. But for Plaintiff's negative testimony towards the ACS, defendants would not have demoted her.

84.   Defendant Brandon Stradford male black was the Director of Employee Relations, one of the units within the Office of Personnel Services at the ACS. Defendant Brandon Stradford was Plaintiff's direct supervisor.

85.   As another example, but not the sole example of harassment and sexual harassment reigned upon Plaintiff, on or about March 14, 2011 through September 24, 2012 (Plaintiff's constructive discharge date), Plaintiff endured unwanted sexual harassment from defendant Brandon Stradford male black. Defendant Stradford's sexual harassment toward Plaintiff included, but was not limited to, ongoing repeated requests for dates, sex, touching, showing of sexually

-23-

explicit photographs of himself on vacation and physically exposing his penis to Plaintiff.

86.   As an example, but not the sole example of sexual harassment from defendant Stradford sometime in or about April 2011 while exposing his penis to Plaintiff he said to her in sum and substance, you see what you're missing.

87.   As a result of Plaintiff refusing to have sex with defendant Stradford he unreasonably interfered with Plaintiff's employment by continually exposing his penis to Plaintiff while making statements to her and by repeatedly threatening to further demote Plaintiff.

88.   On or about April 12, 2011 Plaintiff attempted without success to obtain the assistance of then, Assistant Commissioner, Janet Subrizi female white,(hereinafter "Subrizi") by verbally telling her in sum and substance, I need your help I don't feel safe here. Subrizi, on the other hand, responded in sum and substance, I don't have time now Dawn.

89.   From on or about April 12, 2011 to on or about March 2012 when Subrizi resigned from her employment Plaintiff continually complained to her about the sexual harassment Plaintiff was experiencing with no help coming from Subrizi. Subrizi never once sat down with Plaintiff to have an in person discussion about the sexual harassment.

90. Beginning in or about July 2011 Subrizi shared with
Plaintiff that defendant Stradford said to her in sum and
substance that you (referring to Plaintiff) don't want to
work.

91. In or about April 2011 Subrizi shared with
Plaintiff that defendant Baker said in sum and substance that
Plaintiff did not work and that she could never find
Plaintiff.

92. As a result of discrimination, retaliation, hostile
work environment and sexual harassment Plaintiff suffered
severe anxiety, stress related gastritis and later on or
about August 28, 2012 Plaintiff suffered a mini stroke.

93. On or about April 20, 2012, Plaintiff complained to
Fredda Monn, the new EEO Director about sexual harassment
with no results. Also, during this said period of time
Plaintiff also had several discussions with Investigator
Deborah Reik at the EEOC with whom Plaintiff complained about
work conditions and sexual harassment at ACS with no results.

94. During the period April 27th through June 5, 2012
when Plaintiff requested leave under the Family Medical leave
Act (FMLA) to seek medical help for emotional and physical
distress caused by defendants' conduct Plaintiff was harassed
with unduly burdensome, repeated and unwarranted requests for

-25-

documentation concerning her medical condition even while Plaintiff was on FMLA leave.

95. Upon information and belief, the source of which is Patricia Marin female black Director of Timekeeping Plaintiff's pay was improperly withheld, and though lawfully out on approved leave, defendant Stradford did instruct the timekeeper to with hold Plaintiff's pay and informed his staff that Plaintiff was AWOL. Upon information and belief, the source of which is Barbara McCaw female black payroll clerk defendant Stradford placed Plaintiff's pay checks in an ACS vault.

96. On June 5, 2012 after Plaintiff returned from FMLA leave as a result of Plaintiff's sexual harassment complaints she was reassigned to a different manager within the office of Personnel Services. However, the sexual harassment continued.

97. On or about September 24, 2012, Plaintiff requested to use the balance of her FMLA leave which was six weeks due to illness. Plaintiff's total FMLA time allowance was twelve weeks. Plaintiff reported to her job, Plaintiff requested the rest of her six week balance of FMLA time to recoup from her mini stroke. Plaintiff's leave was approved.

98. Next Defendants directed Plaintiff to file for Worker's Compensation and subsequent to that Defendants

stopped all FMLA payments before the six weeks ran out and before the FMLA time was exhausted.

99. As a result of stress at work Plaintiff had to be hospitalized for Transient Ischemic Attack (TIA)which is referred to above as a mini stroke.

100. As a result of the harassment and sexual abuse Plaintiff also suffered from debilitating headaches, and increased anxiety.

101. As a further proximate result of Defendants' actions, Plaintiff suffered severe anxiety and depression necessitating a daily regimen of antidepressant medication and was forced to take stress related leave. Plaintiff has suffered and continues to suffer from severe emotional distress, lasting embarrassment, humiliation and anguish as well as, other incidental and consequential damages and expenses.

102. Plaintiff completed a Worker's Compensation claim. Defendants next withheld her pay without notice leaving Plaintiff and her two children without money and without health insurance.

103. Defendants failed to advise Plaintiff of alternatives regarding COBRA, etc. after Plaintiff's repeated calls and emails for assistance.

104. At all relevant times, the City and particularly the management at ACS maintained a pattern and practice of unlawful discrimination on the basis of Plaintiff's race, color and sex.

105. Defendants' conduct was malicious; was intended to injure Plaintiff in her body and mind, and was carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling Plaintiff to punitive damages against the individual defendants.

## FIRST CAUSE OF ACTION

106. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

107. By the above acts, including the decision to demote Plaintiff and cut her pay, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. by discriminating against Plaintiff because of her race.

108. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

109. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of

-28-

defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

110. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

111. By the above acts, including the decision to create and maintain a hostile work environment for Plaintiff up to and including her constructive discharge defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. by discriminating against Plaintiff because of her race.

112. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

113. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

114. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

-29-

115. By the above acts, including the decision to retaliate against Plaintiff by demoting her and cutting her pay because she participated in an action alleging discrimination against the ACS, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. by discriminating against Plaintiff because of her race.

116. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

117. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION

118. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

119. By the above acts, including the decision retaliate against Plaintiff by creating and maintaining a hostile work environment because Plaintiff opposed discriminatory employment practices, defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e et seq. because of her race.

120. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

121. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's retaliatory and discriminatory practices unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION

122. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

123. By the above acts, including subjecting Plaintiff to on-going sexual harassment that led to Plaintiff's constructive discharge defendants have violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 703 et seq. by discriminating against Plaintiff because of her sex.

124. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

125. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION

126. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

127. By the above acts, including the decision to demote Plaintiff and cut her pay, defendants have violated 42 U.S.C. §§ 1981 and 1983 by discriminating against Plaintiff because of her race.

128. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

129. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION

130. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

131. By the above acts, including the decision to create and maintain a hostile work environment for Plaintiff defendants have violated 42 U.S.C. §§ 1981 and 1983 by discriminating against Plaintiff because of her race.

-32-

132. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

133. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION

134. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

135. By the above acts, including the decision to retaliate against Plaintiff by demoting her and cutting her pay because she participated in an action alleging discrimination against the ACS, defendants have violated 42 U.S.C. §§ 1981 and 1983 by discriminating against Plaintiff because of her race.

136. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

137. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## NINTH CAUSE OF ACTION

138. Plaintiff repeats and realleges each and every allegation in paragraphs numbered above in this amended complaint with the same force and effect as if fully set forth herein.

139. By the above acts, including the decision retaliate against Plaintiff by creating and maintaining a hostile work environment because Plaintiff opposed discriminatory employment practices, defendants have violated 42 U.S.C. §§ 1981 and 1983 by discriminating against Plaintiff because of her race.

140. Defendants acts were with malice and reckless disregard for Plaintiff's federally protected civil rights.

141. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until this Court grants relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, DAWN F. LITTLEJOHN, requests that this Court:

(1)   Accept jurisdiction over the parties;

(2)   Impanel and charge a jury with respect to this action;

(3)   Order Defendants to provide to Plaintiff, DAWN F. LITTLEJOHN, compensatory damages with pre and post

-34-

judgment interest, not limited to back and front pay, to compensate her for injuries she suffered from defendants discriminating in their employment practices, in amounts to be determined at trial;

(4) Order Defendants to make Plaintiff, DAWN F. LITTLEJOHN, whole from the unlawful employment practices described above by providing compensation for non-pecuniary losses including, but not limited to, pain, suffering, humiliation, physical and mental injury in amounts to be determined at trial;

(5) Order the individual Defendants to provide to Plaintiff, DAWN F. LITTLEJOHN, punitive damages with pre and post judgment interest, for their intentional, malicious, wanton and reckless conduct to deter Defendants from discriminating in their employment practices, in amounts to be determined at trial;

(6) Grant Plaintiff, DAWN F. LITTLEJOHN, preliminary and permanent injunctions, prohibiting the Defendants, their agents, successors, employees, and those acting in concert with them and at their direction from engaging in any of the practices set forth above;

(7)   Ordering the reinstatement of the Plaintiff, DAWN
      F. LITTLEJOHN, to Director of EEO or equivalent
      position at a salary commensurate with said
      position;

(8)   Order Defendants to pay the reasonable attorneys
      fees and other costs incurred by Plaintiff as
      provided by Section 1988 of Title 42 and the Civil
      Rights Acts;

(9)   Award Plaintiff, DAWN F. LITTLEJOHN, Such other and
      further relief as this Court may deem just and
      proper.

Dated: New York, New York
       September 23, 2013

                          Respectfully Submitted,


                          _____
                          Gregory G. Smith GS-9900)
                          Attorney for Plaintiff
                          225 Broadway, STE 3601
                          New York, New York 10007
                          (212) 267-2042

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK          13-CV-1116 (RWS)**

---

**DAWN F. LITTLEJOHN,**

**Plaintiff,**

-against-

**CITY OF NEW YORK, JOHN B. MATTINGLY, FORMER**
**COMMISSIONER, AMY BAKER, BRANDON STRADFORD, ET AL,**

**Defendants.**

---

**AMENDED COMPLAINT**

---

**GREGORY G. SMITH, ESQ.**
*Attorney for the Plaintiff*
**225 Broadway, Suite 3601**
**New York, New York 10007**
**PHONE: (212) 267-2042**

---

To Attorney(s) for the People:

---

Service of a copy of the within is hereby admitted.

Dated: _____

*Attorneys for*

---